We'll hear argument this morning, Case 22-846, the Dept. of Agricultural Rural Development, Rural Housing Service v. Kirtz. Mr. Snyder? Mr. Chief Justice, and may it please the Court, the question in this case is whether Congress unambiguously waived the sovereign immunity of the United States when it amended the Fair Credit Reporting Act in 1996 to provide that any person who violates FCRA's requirements is liable for money damages. The answer to that question is no. To start, there's no basis for claiming that Congress has expressly waived sovereign immunity. For all of Respondent's emphasis on following the literal text of the statute, he ultimately has to concede that nothing in FCRA addresses sovereign immunity directly. Instead, Respondent is asking this Court to read an unwritten waiver into the statute on the theory that every time Congress creates a cause of action that applies to both sovereign and non-sovereign defendants, it must implicitly intend to eliminate sovereign immunity. But that argument is wrong for two reasons. First, it's fundamentally inconsistent with the nature of sovereign immunity. Sovereign immunity is a defense that by definition has effect only when there is a cause of action that would otherwise impose liability. So if every cause of action that covers a sovereign also waived that sovereign's immunity, the defense would never matter. That cannot be right. This Court has therefore followed a narrower rule, under which courts may infer a waiver of sovereign immunity from a cause of action only if Congress has referred to sovereign defendants in the cause of action itself using language that would be effectively negated if sovereign immunity remained available. And it therefore shows Congress's intent to displace the presumptively available defense. But there's nothing like that here. And as the Court's decision in Employees shows, the mere use of a general term defined elsewhere in the statute isn't enough to eliminate the sovereign immunity defense. Second, it's in any event far from clear that these causes of action apply to the United States at all. Even the Court of Appeals recognized that FICRA's criminal provision uses person in a sense that does not include federal agencies and is plausible to interpret the nearby civil causes of action in the same way. I welcome the Court's questions. Mr. Snyder, putting aside sovereign immunity, the statute defines a person as any individual, etc., and any government or governmental subdivision or agency. Putting aside the issue of sovereign immunity, wouldn't that suggest that it applies to the U.S. government? So we accept that that's a plausible reason. So if it does that as explicitly as it does, why isn't that sufficient to waive sovereign immunity? So two answers to that, Justice Thomas. We don't think that it unambiguously covers the United States. And I'd say our argument on that front is under the Court's decision in Utility Error. I would say that's the best decision for that part of our argument. You're asking, even if I assume that 1681N and O use person in a sense that does cover the United States, does that also take the analytically distinct step of waiving sovereign immunity? And so putting aside the Utility Error argument for a moment, on that argument, we would say no, because all the text of the statute does is create a cause of action. And it does so using a general word that, on hypothesis, covers both sovereign and non-sovereign defendants. But there's nothing necessarily implicit in that to show that Congress must have intended to waive the defenses that all defendants covered by that cause of action would have available under ordinary background principles. So I don't think anyone would think it's strange, for example, if a defendant who's covered by the plain text of the cause of action, but who violated FCRA more than five years ago, were to assert a statute of limitations defense. That doesn't negate anything in the cause of action. And similarly here, the fact that, again, on hypothesis, some defendants covered by the cause of action would be able to assert a sovereign immunity defense doesn't negate anything in the statutory language that Congress used in adopting that cause of action. Now, it is... I'm not sure I understand that, Mr. Snyder. I mean, suppose that we just take the definition and we plug it into N&O. What would your answer be then? So if the Court were to plug all of the words from the definition into N&O specifically, then the only purpose of those words in N&O, the words referring to governmental entities, would be to make clear that Congress is authorizing recovery against sovereign defendants. So your answer then would be that there is not sovereign immunity. Yes. Our answer would be that even though Congress has not directly addressed sovereign immunity... Yeah, I mean, it falls into the whole line of cases where Congress has authorized a cause of action against the government and we say, well, that's inconsistent with the recognition of sovereign immunity, sovereign immunity would negate the very cause of action that Congress has created, right? Those are the line of cases that we discussed just last year. And what you're saying to me is, yes, if you plug the definition into N&O, the liability provisions, those cases would... you know, the same answer would follow. Yes, that's correct. Okay, so then why does it make a difference that they're not plugged in to N&O, but instead, you know, the definition has a lot, a lot, a lot of words, right? There's a person, there's a corporation, there's an association, there's an enterprise, et cetera, et cetera. You can see why Congress didn't want to say that every time Congress meant to refer to a lot of different entities. So, but, you know, statutory interpretation 101, that we take a defined term, we plug the definition in, and that's what the meaning of the statute is. So that's what the meaning of the statute is. So, Justice Kagan, if the question here were just what the meaning of the words in the cause of action were, I would agree with you. So last term in Locke, Deuce, Lambeau, for example, there was an express waiver of sovereign immunity that made absolutely clear that what Congress was intending to do was waive sovereign immunity, and it did so on behalf of governmental units and then defined governmental units elsewhere in the statute. And this sort of subbing in the words from the definition into the waiver of sovereign immunity would have worked perfectly there, because all you were asking was, what do the words that Congress used mean? But here you're not asking just what do the words mean, you're asking about the necessary logical implication of what Congress has done. The necessary logical implication of what Congress has done is authorize a suit against people, persons, as defined in the definition section. Then you go to the definition section, and then you discover that what Congress has done is authorize a suit against natural persons, enterprises, and governments. So respectfully, Justice Kagan, I don't think that's right. At the time that Congress adopted that definition, the one thing we know is that it wasn't doing so for purposes of allowing civil recovery against everyone covered by persons, because the statute didn't authorize recovery against persons. Right, but then there was the amendment, so why can't we assume from that that Congress was trying to reach all of the defined entities? So I think maybe that would be a plausible reading of the statute, but in order to find a waiver of sovereign immunity, you have to conclude that it's the only plausible reading of the statute. Why isn't it not the only plausible? I mean, Congress amended the statute clearly to expand liability. Do you concede that? Yes, we agree with that. All right, and it expanded liability by substituting the previous terms, which were narrower, specifically referencing only any consumer reporting agency or user of information. It expanded liability by striking that and putting in the word person, or any person, and any person is elsewhere defined in the statute to include government. So what is not clear about Congress's intention to expand liability to include government? So we do have this other argument about whether it's clear that Congress actually intended person to include the government, and I do eventually want to get to that, but just I think you're asking me to assume that person takes the statutory definition in 1681N and O, and why isn't that enough to show that Congress must have intended to waive sovereign immunity? And my answer is that it's not unusual for Congress to create a cause of action that applies to a range of defendants, some of whom will still have defenses from other background principles of the law. Now, in the cases that this court was referring to in the Financial Oversight and Management Board... Counsel, I'm sorry to interrupt, but I just want to understand the nature of your argument in response to my colleagues. It could be one of two things, it seems to me. One, what it might be that N and O don't take the definition, or two, they do take the definition and that's still insufficient. Which is it? We are making both of those arguments. The argument... Arguing the alternative. Yes, we're arguing the alternative. So even if you accept, as the questions so far have asked me to assume, that person covers the United States, in that circumstance you're in exactly the same situation... Let's deal with the first argument, just that they don't take the definition. I want to understand that because this court, as Justice Kagan has alluded to, has said that it's virtually conclusive. I think Sturgeon, a few years ago, we said that virtually conclusive that the definition applies. Yes, so we accept that ordinarily statutory definitions make a great deal of difference, but this court has also... More than a great deal of difference. We've said they're virtually conclusive. Yes, but this court has also rejected the idea that you always just plug in the terms wherever the defined term appears in the statute. I think the court's decision in utility air is really significant on this, and in particular the structure of the court's reasoning in that decision. So utility air involved provisions of the Clean Air Act that applied to facilities that emitted any air pollutant. And EPA had concluded that those provisions unambiguously applied to facilities that emitted greenhouse gases because the act-wide definition of air pollutant included greenhouse gases. We've read all that. I guess I'm wondering, why isn't it virtually conclusive here? So the reason is that just as in utility air, there were other provisions of the act that used air pollutant in a sense narrower than its defined meaning. And there may be other provisions in which it's more narrowly applied here, but why does that pertain to N and O is my question. So I'm being too slow in getting this. You are. Let's get to the statute before us. Utility air, may I? Please. Utility air was a very special case in which the court decided that if you just plugged the definition in, the entire regulatory scheme would collapse. So the first part of the court's decision was utility air. So all I'm saying is that that's nowhere near this case. I mean, I understand that the government likes sovereign immunity and the waivers of sovereign immunity are not all that common, but this is not a utility air scheme where essentially the court found that it was inconsistent with the entire rest of the statutory scheme. Recognizing a cause of action here is not inconsistent with the entire rest of the statutory scheme. I'm sorry about that. No, I appreciate that. And that's my question too, so please. So even the Court of Appeals recognized that 1681Q does not use person. I understand. We're talking about N&O here, though, counsel. Let me put it this way. I'm sorry to repeat the question, but this is where I get stuck. It doesn't seem to me inconceivable, maybe you've got an argument, that a rational Congress might, to protect consumers in FCRA, which is all about false reporting about consumers' debts and delinquencies, say that the government should turn square corners too, just like other private credit reporting agencies, and that when it falsely reports consumers' debt, it should pay that N&O. Again, let's talk about N&O. Let's not talk about Q. Let's not talk about utility air. Let's talk about N&O. You have to come up, it seems to me, with some argument that it's inconceivable Congress would have wanted to do that sort of thing. Respectfully, Justice Gorsuch, I think our task is to show that it's plausible that that's not what Congress did here. That's what the clear statement rule requires. And we think that because Congress has... That's the second step. We're still in the first step. What does N&O mean? So we don't think that N&O clearly covered the United States. Congress has used the word person in other parts of the statute in ways that do not cover the United States, and we think it is, therefore, plausible to think that when Congress used the word person in N&O, it was also using N&O... What are your best examples of that? So we think 1681Q... I know I've been asked not to talk about that. You can talk about it with me. We think that 1681Q clearly uses person in a sense that does not use the act-wide definition. Even the Court of Appeals recognized that it would not be reasonable to think that Congress authorized criminal prosecutions of the United States just through the bare use of the word person, and it must have meant something narrower there. But why is there a definitional change? I mean, I think the problem that I'm having is that A, in the definitions, the text of this statute says that the definitions apply throughout the entire subchapter. And I understand your point about Q, but why isn't that just a carve-out? They're just saying that, you know, certain categories of persons can't have criminal prosecution, but it's not a change in the definition of person. I guess that's not the way I read that provision. I think that the statutes in both Utility Air and Employees had similar provisions that said this definition applies everywhere. In Utilities Air, the Court said, but we know that Congress didn't always use the defined term in a sense that carried its defined meaning, and so when it appears in the provision at issue, it's not unambiguous that it carries that meaning. Counsel, can I... Go ahead. Can I go back to Q? Because I was... I don't know why it's in Congress or why it suggests a problem. I went back and researched the Clean Water Act, the Safe Drinking Water Act, and the Agricultural Adjustment Act, at least three. I didn't canvas the universe. Include a criminal provision that applies to the United States that's nearly identical to this one. It says imprisonment and... or a fine. So I don't know why copying what has been used in other acts for which there's no question that there's a waiver of sovereign immunity, why the fact that they refer to imprisonment and fine means that somehow sovereign immunity wasn't waived. It's a common provision written exactly like this one is, and in those acts, we've never said that their existence calls into question the waiver of sovereign immunity. So I'm not sure. Are you referring to criminal provisions in those acts? Yes, yes. So I think the significant thing about the criminal provisions elsewhere in the code, my friend has pointed to just one, that when Congress has wanted to accomplish that really unusual result, it has been just crystal clear. No, that's what I'm saying to you. Read the best example is the Clean Air Act. It's virtually identical to this one. It basically says any person who violates the act, and there's no doubt that the person is the government, is subject to imprisonment or a fine. So it's written identically to this provision. So if I have that as text and I see it in other statutes, I don't know why reading it here would be incongruous to me or suggest that somehow Congress didn't intend a person to mean exactly what it means. So Justice Sotomayor, even the Court of Appeals recognized... Well, it may have recognized it, but what I'm saying to you is I don't. So accepting that, let me maybe turn wisely to other points of our argument. 1681 UJ, which is a provision where Congress really did want to authorize civil actions against the federal agency... Is that the FBI one? That's the FBI one, and it refers explicitly to the FBI. Again, I'm not going to suggest that... Yeah, that one is also difficult for me because that provision is an exemption from the act. It's basically permitting the FBI to do things and consumer agencies to do things that otherwise might violate the statute, and it's now saying, okay, we've given you an exemption, but we're going to keep you liable if you step outside the terms of this exemption, and it sets forth the terms of that liability. I don't know why that is the same thing, why that's illogical or suggests incongruity with the waiver of sovereign immunity for other violations of the act. So, Justice Sotomayor, the only point we're making about that provision is that when we know that Congress wanted to address civil liability of federal agencies, it said so expressly. I'm sorry, finish your answer. My answer is going to have three more parts. Go ahead. I'll wait. If you want to jump in. I'll wait. The next thing that I'd point to is that reading 1681N and O to use the act by definition would render those provisions plainly unconstitutional as applied to unconsenting states under this court's decision. I'm sorry, we had the same problem in the Kittle case. And in the Kittle case, we had three layers of reference to the waiver of sovereign immunity, and we didn't require magic words. We just figured out what the definition was, even though it referred to another statute and the other statute referred to a different provision, and yet no magic words were required. And in Kimmel, we had exactly the same thing. The government argued that it is incongruous to permit suits against the state because the states hadn't waived their sovereign immunity. But that's a different constitutional provision. So in Kimmel, there was language in the cause of action itself that was there only for the purpose of authorizing suits. Well, assuming we buy your first argument that any person who is negligent doesn't mean the sovereign, if it's negligent, is responsible. We have to take that first step, right? So just to be clear, that's not our first argument. Our first argument is that even if you think the cause of action covers both sovereign and non-sovereign defendants, as this court recognized in employees, the question of whether the government or the Congress has lifted the sovereign immunity defense is analytically distinct. It is analytically distinct. It can't lift state sovereignty, so it can't do it here either. So in employees, the court assumed that Congress would be able to lift sovereign immunity. That was before... Well, that was... Employees is an old case, 1973, analyzed in a very different way with a lot of different issues. So, Justice Sotomayor, respectfully, I disagree with that. I mean, I think this idea that employees and pardon are sort of of a piece in the battle days, I just don't think that's a plausible description of those cases. Who let the other side answer that? I don't want to monopolize you. Just briefly on that, I mean, in College Savings Bank, the opinion for the court by Justice Scalia points out that employees was written by one of the pardon dissenters over the solitary dissent of pardon's author, and that it began the court's retreat from pardon. So I think employees is entirely consistent with this court's modern approach to sovereign immunity. The other two parts of the answer that I promised Justice Alito I was going to get out is that we think it's significant that the 1996 amendments occurred just months after Seminole Tribe. The idea that Congress adopted this plainly unconstitutional statute without saying anything at all in the statute itself or the legislative history, we don't think is plausible. We also think it's significant that these were adopted at different points in time, so you don't have Congress adopting a cause of action applicable to persons and then saying at the same time that for those purposes, we want persons to include the United States. And then finally, we think there are a number of other statutes where, as with FCRA, Congress has defined person to include the United States, but then in the causes of action, when it's wanted to authorize recovery against the United States, it hasn't just relied on that general definition of person. It has said in RCRA, for example, that suit is authorized against any person, including the United States. And Justice Kagan, to go back to where we started with why that is different from a case where Congress has just... I realize I've skipped over Justice Alito, but... Long ago. Before you start talking to me, I'd like Justice Alito to ask his questions. This may be a frolic and a detour, but have there been real cases in which the United States has criminally prosecuted itself? I'm not aware of any. I mean, if such a case came here, what would... It's Monday morning. I'm having trouble getting a grasp on this. Well, how would this work? You would be arguing on one side and one of your colleagues would be on the other side, and you'd be arguing against each other. I think that's right. I mean, it's a pretty incongruous idea. We think that if Congress wanted that result, it would have made it much clearer than just using the word person. Again, though, the reason that it matters why Congress uses just person or instead addresses the sovereign in the cause of action itself is that when Congress uses references to the sovereign itself in the cause of action, the only purpose those words can serve is to authorize recovery against the sovereign. And so in Financial Oversight Management Board, the court said that when Congress has expressly authorized suits in that way, it would effectively negate the statutory language to allow the assertion of a sovereign immunity defense. And in that circumstance, the court has been willing to infer that Congress must have intended to waive sovereign immunity. Well, it does negate the statutory language if you do the normal thing that we do when interpreting statutes, which is plug in the definition into the provision that uses the defined terms. So here, plug in the definition to enter no, and then it negates the statutory language in the same way that it does in all those other cases. So I've said that before. Here's what I really want to ask. What does person mean if it doesn't mean that? So we think that just as we think in 1681Q, it means its ordinary definition, so too in N and O. We think it carries its ordinary definition. What is its ordinary definition? Does it include individuals? It includes individuals. Does it include partnerships? It includes partnerships. Corporations? Yes. Trusts? Yes. Estates? Yes. Cooperatives? Yes. Associations? Yes. Other entities? Yes, but not government. Just not government. I mean, that's a strange way to read a defined term, right? We'll take every part of the defined term and plug it in, but not plug in this last listed thing before you get to the residual term. So that's what we think Congress did in 1861Q, and we think it's plausible to think that it did the same thing in 1861N and O. But to the point you made before that, I mean, yes. What about the point I'm making now? That is my answer, that we think that it carries a meaning other than its defined one, just as air pollutant and utility air carried a meaning other than its defined one, just as person in 1681Q carries a meaning other than its defined one. But we're taking the entire definition, except we're striking government. We're taking the entire definition, except for one word, two words, governmental subdivision or government, four words. Yes, because that is the ordinary meaning of person. Why are you doing that? I mean, put aside the ordinary meaning of person. We're doing that because we think it's plausible to read the civil liability provisions in the same way that it would be plausible to read the criminal liability provisions. Well, I thought you were doing that because of sovereign immunity, and it's important to protect the fiscal United States against ambiguous derogations of sovereign immunity. So we're also doing it for that reason. We think that that's where the... But Congress can waive sovereign immunity, and the question is whether Congress has done so. Yes, and nothing in the statute... May I finish? Nothing in the statute says anything about sovereign immunity. You can only do that from implication, and we think, logically, the fact that Congress didn't specify sovereign defendants in the cause of action itself means that implication is not available here. We'll afford you a couple minutes for rebuttal. Thank you, Mr. Snyder. All right. Justice Thomason? Justice Alito? Sure. I do have one question. So putting aside what N and O mean, we've gone around that tree. Your second argument was that Congress needs to be clearer than even that to waive sovereign immunity. Even that wouldn't be enough. And I guess I wonder why. I certainly understand... This is kind of a first principles question. I certainly understand the clear statement rule this Court has developed to protect the 11th Amendment and state sovereign immunity, separate sovereigns. But here we have the sovereign itself speaking, right? It's not waiving someone else's immunity. It's not purporting to strip another entity of its protections under the Constitution. It's Congress, which has control over the federal fiscal... It's self-deciding. And so I wonder why the clear statement rule would be appropriate in those circumstances. So two answers to that, Justice Gorsuch. The first is that Respondent's argument has exactly the same effect in terms of Congress's meaning as to states and in terms of its effect as to Indian tribes and foreign nations. If you rule against the United States here, you will necessarily be saying that it waives sovereign immunity for them, too. You're just fighting my question. I'm saying it is different. It is one thing to waive a tribe, a state, foreign government's immunity. Congress purport to exercise that power under the Constitution, an extraordinary power that's permissible sometimes, but generally we think of as inconsistent with the structure of our Constitution. And that's why we have traditionally required a clear statement rule. It's less clear to me what justifications we have for requiring magic words to waive sovereign immunity when it's the sovereign itself opening itself up to suit. So we of course don't think it's magic words, but that's not your question. This court has repeatedly said that it applies the same standard when evaluating... I'm asking you why. So the court has identified a number of justifications for... What do you think? ...the clear statement. I've combined two. First, as Federalist 81 said way back at the founding, it was well-established then that the sovereign could not be hailed into court without its consent. And second, tracing all the way back to Blackstone, it was well settled that courts should not interpret statutes to apply to the sovereign unless that was the only permissible reading. And so by the middle of the 19th century, courts had recognized that in light of those two principles, you couldn't read a congressional enactment to waive sovereign immunity unless that was the only plausible reading. And of course by now, this court has repeated that so many times that it's a well-established background principle against which Congress legislates. Thank you. Justice Kavanaugh? It's on the clear statement rule part of your argument. So that part. I mean, we said that sometimes the better interpretation of a statute will not necessarily prevail because of the clear statement rule. So even assuming the interpretation of the statute doesn't... is against you, the better interpretation, you can still prevail under the clear statement rule. Yes, that's absolutely right. We just need to... So that's the starting point. And then for the why, you know, ultimately it's money that Congress has the power to appropriate, right? And we want to be careful about that. Yes, we think that's correct. Okay. And that's basic separation of powers? Yes, absolutely. Okay. So how much would it cost here if you were to lose this case? So we don't have a precise estimate of that, Justice Kavanaugh. I will say that there is a case pending in the Seventh Circuit right now that's being held for this case in which the plaintiff has attempted to assert a class action. We understand that the damages, if they were to prevail, would be in the millions of dollars. I don't know exactly what that would be, but Congress would have anticipated that the potential liability here would be significant, I think. And punitive damages, too, right? So we, of course, don't think those would be available, but I think if you accepted that... He accepts their argument down the line, punitive damages could be available. That's correct. Okay. And then on employees, you've mentioned that case, and that case seems structurally... I get asked a lot to the other side about this, seems structurally similar to this statute, how this one developed. But the other side basically says, don't pay attention to employees, and I think Justice Sotomayor alluded to that because it's an old 1973 case, so I want your response to that. So, I mean, first, we don't think this is how this Court treats precedence. Again, as I said, we think that this Court has reaffirmed employees and recognized that employees began their retreat from pardon. But even just looking at the text of employees, I think it's consistent with the argument and the distinctions that I'm drawing today. The Court there said that the cause of action, by its literal terms, covered state agencies, but it recognized that the relevant question was whether Congress had intended to bring the states to heel by lifting their immunity. So it recognized that was a distinct question, and then it said Congress wouldn't have done that silently. And in particular, it said that if Congress had intended to do that, it would have done one of two things. It either would have addressed immunity expressly, or it would have amended the cause of action. And in that context, what that would have meant was adding a specific reference to state agencies to the cause of action. And because Congress hadn't done either of those things, the Court and employees found there wasn't a clear waiver. We think the same thing is true here. So then to pick up on Justice Kagan's questions earlier, if you see employees on one side of the line and you see cases like Kimmel on the other side of the line where the reference to the public entities is in the cause of action itself, that's slicing it pretty thin. Like, what sense does that make? Or what principle would undergird sticking to employees in the way that you're advocating? So I think in the cases like Kimmel, there's a superfluity argument that unless you hold that Congress has waived sovereign immunity, that text in the cause of action will do absolutely no work. And so the Court has said Congress wouldn't have effectively negated that and has been willing to infer a waiver of immunity. But Respondent has conceded that our interpretation doesn't produce any superfluity here. So even if you think that probably members of Congress intended to waive sovereign immunity, there's no necessary implication that they must have. And under the clear statement rule and under employees, that's enough to rule for us. Can you give me just one quick example of how it's not superfluous? So... If you were to prevail here. So a person would cover entities other than private parties, other than credit reporting agencies that furnish information to those credit reporting agencies. No, the coverage of government, how the coverage of government wouldn't be superfluous, even if you were to prevail here. So the coverage of government ensures that the government can obtain credit reports. I mean, the coverage of government was there before the cause of action. So the one thing we know is that the coverage of government is not there in order to allow recovery under the cause of action. Thank you. Justice Barrett? In employees, are we bound? Is it part of the holding, the methodology applied by the case? So it seems to me like that's what you're arguing. This is the methodology that the case employed, and so we must follow the same methodology. So is that part of the holding? I think that is part of the holding. I mean, the other thing I would say here is that when you're talking about implications, the cause of action doesn't expressly say anything about sovereign immunity. So you can only find a waiver by thinking that in adopting that cause of action, Congress must also have intended to create a waiver. And if you were a member of Congress and you looked at employees and you said, all right, I've got a cause of action that applies to a general term. If I define that general term somewhere else in a way that it covers sovereigns, will that lead to a waiver? So employees is part of the backdrop against which Congress legislated and its methodology? So, I mean, I think it makes it plausible to think that members of Congress would not have understood just the bare creation of a broad cause of action as sufficient to take the analytically distinct step of waiving sovereign immunity. Okay, second question. Q is your best argument. If it wasn't in the statute, would you lose? No, if it wasn't in the statute, we would still have exactly the same argument under employees. And things like the fact that 1681 N and O would be unconstitutional as applied to the states, I think would still give us... Well, unless the states waive their sovereign immunity. Yes, I mean, of course, you could say the same thing about application to federal agencies, that there are some federal agencies as to which Congress has waived all immunity. And so if you wanna just read 1681 N and O as creating causes of action that apply when there's a waiver from someone else, somewhere else, you can do that with a federal government too. But my understanding of respondents' argument is that Congress was intending to eliminate sovereign immunity in 1681 N and O. And if that's right, then Congress is acting blatantly unconstitutionally with respect to the states and didn't say anything at all about the Seminole Tribe decision from just a few months earlier. We think that's unlikely. Last question. Where are you getting the definition that you gave Justice Kagan when she asked you what person would mean there? Is that just kind of what ordinary people would understand? Is that the Dictionary Act? It's both. I mean, I think the Dictionary Act definition comports with how an informed legal reader would understand the word person in most places. And we think that that understanding makes sense in 1681 Q. So we think it makes sense that Congress could have plausibly used it in the same sense nearby in N and O. Thank you, Mr. Schneider. Justice Jackson? So I guess I perceive employees as being structurally dissimilar in relevant ways in light of its amendment history. And so I'm hoping that you can comment on that. I mean, it seems to me that what happened in employees, to the extent that there was some uncertainty about what Congress did, it was because Congress amended the definition section, right, to include government. And that definition section applied to a whole host of things in the statute, the duties, the liabilities, or whatnot. And so there was palpable uncertainty on the court's part as to whether expanding, what was it, employers to include government actually affected a waiver of liability with respect to the liability section. It seems to me here, when we have the amendment to the liability section, expanding, as you conceded previously, the liability section to include other entities by use of the term person that had been previously defined to include government, we're actually accomplishing a different result. It seems to me there isn't the same kind of uncertainty in the relevant situation of whether or not they intended to expand liability, which is what we need for the purpose of a waiver. Can you comment on that? Sure, so two things in response. The first is that I think this court has ordinarily said you just look at the statute as it exists. I mean, respondent has said you should look at it as it exists today. But that's not what happened in employees. So if we're gonna go with employees, which is what you're saying, we're going with that methodology, they didn't just do a plain text. They were talking about what Congress's intent was. Isn't it strange that Congress amended it and didn't amend the liability provision? And what I'm saying is here they did. So I think if you want to look at that timing, I think the timing actually cuts the other way because in employees, what Congress was doing was taking a statute that already authorized civil liability against employers and saying, we want state agencies to be employers for purposes of this statute. We're gonna cover them under the same definition that until now has covered all employers. And so in that circumstance, it might have been reasonable to think that Congress intended state agencies to be covered in exactly the same way as all of the other employers because Congress was specifically focused on state agencies. Yes, but it wasn't focused on liability for this purpose. That's my only point. Can I ask you another question? I guess I hear you suggesting that there has to be an express mention of the federal government in the provision. So I'm wondering, is the government not conceding that we have said that you can satisfy the clear statement rule by implication? No, we accept that you can establish it by implication. As the court said in College Savings Bank, it has to be overwhelming implication. Right, but so an implication could occur when what? In other words, it seems to me here that there is no mention of sovereign immunity, so we're operating in implication land. The implication is coming from the creation of a cause of action that applies to the government. You're arguing as to whether or not it applies to the government. No, you're not? No, we're not arguing. Okay. We have a different argument about whether the cause of action applies to the government. I see. But this part of the argument, we think even if you think person includes the government, all that does is show that the cause of action applies to the government. And isn't that enough to be the implication? No. Why? Because the fact that you have a cause of action that covers a particular defendant doesn't speak one way or the other to whether that defendant may have particular available defenses. No one would think it strange that this cause of action applies to private parties that violated FCRA more than five years ago. By its plain terms, it absolutely covers the government. I don't understand that. I mean, we're talking, we start from the standpoint of has there been a waiver of sovereign immunity? That's the question that we're asking to begin with. That's why we're engaged in this exercise. So when we start there, I'm not sure I understand whether or not there are other defenses available doing any work with respect to us trying to determine whether sovereign immunity has been waived. So this court said in Meyer that the question of the cause of action and the question of the defense of sovereign immunity are analytically distinct. So then there's no implication on the basis of the cause of action. No, there can be implication. I know that I'm drawing fine lines, but logically, there is an implication that Congress intends to waive sovereign immunity if it creates a cause of action that applies only to sovereign defendants or that expressly names sovereign defendants. So it has to be explicit with respect to, it can't be that they do so by naming all these other entities and adding in government. Is that your point? It has to either be standalone just the word government in the person definition or it has to be written government in the actual 1618 N. Yes, because that is the only circumstance in which the statutory text that refers to government would have no effect if the government were able to assert sovereign immunity. And where have we said that before? So I read the court's decision in financial oversight and management board to say that. I think that's the only way that you can reconcile cases like Kimmel on the one hand and employees on the other is to say that Congress distinguishes in this way. And if you look at statutes like RCRA and the NPRSA that we point to at pages 22 to 24 of our brief, Congress has done what we've said it could have done here. Congress has said it's authorizing suit against any person, including the United States. We agree that that gives rise to the imposition. Thank you. Thank you, counsel. Mr. Joshi? Mr. Chief Justice, and may it please the court, the Fair Credit Reporting Act imposes civil liability on any person that negligently or willfully fails to comply with FCRA's requirements. It expressly defines person to include any government agency. The term person is equivalent to its definition and when FCRA's definition of person is plugged into FCRA's civil liability provisions, those provisions create causes of action against federal agencies that are clear and specific enough to waive sovereign immunity. Congress was not required to state that persons include federal agencies a second time in the cause of action to make its intent clear. Congress knew what it was doing when it amended FCRA in 1996. When it did so, it consistently used the term person to describe both who would be subject to FCRA substantive duties and who would be subject to FCRA's enforcement mechanisms. Interpreting person to mean something different in the enforcement provisions would make FCRA's substantive duties completely unenforceable against governmental furnishers. Moreover, Congress knew how to and did choose words to alter the scope of liability where it wanted to do so. Thus, whereas Section 1681N generally provides for damages against, quote, any person, 1681N-A1B creates a special remedy for certain violations by a natural person. That was an amendment in 1996 as well. Congress also expressly limited the government's liability in FCRA's sister statutes in the Consumer Credit Protection Act. It did not do so in FCRA, indicating that Congress intended no such limitation. I welcome the Court's questions. Counsel, there's much discussion about employees, and I'd like you to address that, what the government argued, but I'd also like you to consider addressing whether or not what's necessary for the government to abrogate state sovereign immunity, whether that standard is the same as the standard for waiving its own sovereign immunity. Sure. So on employees, I think the best sort of empirical evidence of its continuing force are the five courts of appeals that have addressed this very issue, the question of whether FCRA waives sovereign immunity. There's a free-to-use circus foot on that. The government has raised employees in each one of those cases. Not one single court, not even the two that agree with the government's position thought employees was worth discussing. It's too out... I suggest that's because the analysis does not comport with how the Court reads statutes in the modern era. Employees, as I read it, was telling Congress how to craft an amendment to make its intent clear. The modern, the sort of current way the Court discerns congressional intent is to look at the provisions as a whole, the amending provisions, as well as the original provisions, and construe them together. And employees is inconsistent with that. I don't understand that, really, looking at employees because it relies on the text of the provision and says that because the addition of public employees, employers was in a separate definitional provision, that wasn't good enough. And then the dissent echoes your argument. Justice Brennan's dissent says that it's the sheerest sort of ritualism to suggest that Congress excluded the states from 16b suits by not expressly referring to the states in 16b. In other words, Justice Brennan was saying you're being too textualist, majority opinion, in how you're going about this. And the majority said, I read it as establishing a principle. Well, we're going to draw the line here if it's just in the definitional section. And that's not good enough for a waiver. So employees started off by looking at the legislative history to discern what Congress wanted to do when it amended the FLSA in 1966. The principle rested on the text. I mean, I acknowledge that then it went on to the legislative history and might have had an even looser standard for waiver of sovereign immunity than we now apply. But even under that looser standard, the court said, no, no waiver. Well, the textual part of employees... All right, you're in trouble if we take employees seriously. At least I want you to respond to that. Sure. I do think the textual part of employees, which indicated the court would find it surprising. I think that's an exact quote. If Congress chose to amend the FLSA but did not amend it in this way, now the court says Congress does not have to use magic words and it doesn't have to use a magic structure, I would say, doesn't have to state its intent. Do you still agree there's a clear statement rule that can override the better reading of the text? There is a clear statement rule. We don't fight that. Can it override the better reading of the text? Because that is the meaning of a clear statement rule. We don't question that there has to be one plausible meaning of the text in order for us to prevail. I think I interrupted you before you answered Justice Thomas' question about federal versus state. Sure. The last thing I'll point out about employees before I turn to federal versus state is that a critical part of employees was that the federal government could still enforce the FLSA against the states. The government's argument here takes us a step further and says no one, not even the federal government or the state governments, can enforce employees against any governmental furnitures because the definition of person does not apply to 1681S, which is the administrative enforcement provision. So this would be a step beyond employees. On the federal versus state issue, Congress, I don't think there's a different textual standard in this Court's cases between waiving sovereign immunity and abrogating state immunity. It's simply that what Seminole Tribe and its progeny hold is that where there's a conflict between what Congress wants and what the state wants, the state wins, unless it's in a few discrete areas where the Constitution abrogates state sovereign immunity or it's the 14th Amendment case. But if this statute were in the 14th Amendment context, I think this language would be sufficient to abrogate state sovereign immunity just as it waives federal sovereign immunity. Counsel, I think it's an unavoidable consequence of your interpretation that the statute authorizes criminal prosecution of the United States. Now, if there were such a prosecution and the United States were convicted, what would the pre-sentencing report look like? So as a technical matter, I would say the proper defendant in a FCRA action would be an agency, not the United States itself. That said, I don't think this court has squarely held how far the federal... the absence of criminal liability for federal... for governmental entities extends. Last year in Hawke Bank, I think you said criminal law can't apply to foreign states and their arms. I don't think you said that in the context of domestic agencies. In Bennett v. Speer, you suggested that perhaps agencies could be criminally liable or civilly liable for failing to adhere to a biological opinion. So you agree that your reading of the statute leads to that result, that a criminal prosecution can be brought against the United States, whether it's through the United States agency or the nation as a whole? That is one reading. I mean, I can't say it's absurd since this court has not said it's absurd previously. That said, the easier path, I think, for this court would be to follow what Judge Katz said in the D.C. Circuit in the Maurer decision and what Judge Cross said below, which is that any contextual reason you might have for disregarding an otherwise controlling statutory definition in the criminal context is unique to the criminal context. But how does that work? I mean, N and O and Q are all added at the same time. You can add S to that, too, because S raises its own anomalies. They're all enacted at the same time and they're all different kinds of liability provisions. And you're essentially saying, and you're right that Judge Cross said this below, Judge Katz has said it, but you're saying, well, you know, it fits with N and O, so we'll use one interpretation there. It doesn't fit with Q, so we'll use a different interpretation there. So one correction, Q stems from the original 1970 Act that enacted the definition of person. The 1996 Act, Congress amended the civil liability provision and amended the administrative enforcement provision to authorize enforcement against persons. But it didn't add in the term person in 1681Q in 1996. That's okay. It enhanced the penalties in that provision. With that said, each, there's no, I think, well, the civil, Q rests, it's sort of a stand-alone self-contained provision. It doesn't interact with the rest of the FCRA in any way. It contains its own substantive prohibition and its own criminal penalties. Whereas you have the liability provisions and the enforcement provisions which are designed to enforce the substantive provisions of FCRA. To pick up on the Chief Justice question, it's not just criminal prosecution against the United States. It's punitive damages against the United States. It's very unusual. State and federal enforcement against the United States would be contemplated if we took your interpretation. There's an express waiver and another provision that was enacted months earlier. The government says that's an anomaly. The Privacy Act is a carefully reticulated scheme for imposing liability on the government for Privacy Act violations. They're saying you would create this anomaly. There's a string of anomalies that the government says would be created by your position. Well, I think the only one that qualifies as even a debatable anomaly would be 1681Q. The government just doesn't... I don't think they've made any... I thought the answer was that it's not that the definition is shrinking or expanding provision by provision. The definition of person is that you can have this group of entities that are defined statutorily as persons and that carries throughout the whole statute. But there may be various provisions in which subsets of persons are carved out because they have other defenses. Just because a person is there doesn't mean that every person will automatically and always be subject to the entirety of that separate provision. As the government said, they could have separate defenses. They could have other reasons why they're not subject to criminal liability even though they're still persons for the purpose of the statute. So if that's happening, then the government's observation that in certain parts of the statute persons are not going to... or governments, even though they're persons are not going to be subject to that part of the statute, it seems to me doesn't really help their argument because as Justice Gorsuch said, we don't see even that happening in N&O which is really all that is at issue here. Right, I think the government argument really tries to focus on provisions away from N&O because there is no textual basis in looking at N&O for not applying the definition as written. And there's no real basis for suggesting that notwithstanding the statute saying that persons is defined in this way throughout the entirety of the provision, sometimes it's not really defined this way. It seems to me that is an implausible reading of the text of the statute that very clearly defines the term and says it applies everywhere. So if it's not actually operative in certain places, it's not because the definition has changed, it's because something else is going on that would prevent that consequence occurring in that particular circumstance. I think that's right. For example, in 1681G, subsection G, Congress has an express alternative definition of person for purposes of that provision. That doesn't mean somehow N&O become ambiguous in terms of what the definition of that is. You think that it's right, but under our sovereign immunity precedent, that has to be the only way of reading it. In other words, there's no other way. In all these other areas where person doesn't actually mean person the way it's defined in the statute, but means much less. And there's not just one, there's two, there's three. And you have to say that changing the reading of person is the only way you could read that. Because if it isn't, then there is then sovereign immunity it seems is implicit in the statute in a way that other provisions may not be. Well, assuming the hypothetical, which is that there are variations in what person means throughout the statute. It's not my hypothetical, but go ahead. Yes, the fact remains if the court's going to part otherwise controlling definition, it looks to something else in the statute that provides a countervailing argument. For example, utility error was brought up. The court looked to provisions of the statute that said if you apply the definition of effluent to these provisions, we have an unworkable statute. And to the extent you conclude that person doesn't apply to 1681Q because that's unworkable or improbable that Congress intended to extend criminal liability this far, that is an argument interpretation that would be limited to 1681Q. Well, you say in the statute, but I guess the argument is that there can be limitations outside the statute that would apply as well. And I'm thinking in particular of our decision in the Bond case, the chemical on the doorknob that is under one interpretation, perhaps a literal interpretation of the statute would be covered by the chemical weapons treaty. And we said that sometimes arguments like, well, that seems pretty implausible. Can Trump, what would otherwise be a pretty precise reading of the statutory language? Well, that's right. I think Bond is a good foil for this case. The Court found, your opinion for the Court, found that the statute was ambiguous. And I agree that if this statute is ambiguous, then the sovereign community can and favors the government. But there are the definitions the Court calls improbably broad. There's nothing improbably broad about defining person to include the government. The Court has said if Congress wants to not have the ordinary meaning of person... I would have thought the improbability comes from the argument that this would mean you can prosecute the United States. It can mean you can get damages from the United States and so on and so forth. Even if prosecuting the United States is improbable, Congress waives sovereign immunity in a number of cases. There are other statutory schemes that authorize intergovernmental liability. The resource conservation recovery act. Keep going. You said at the beginning that Congress knew what it was doing when it amended the act, but I don't think it realized that it was imposing this liability. If you look at the CBO scores, they carefully analyze how much the additional costs would be for the executive branch and enforcement and the judicial branch in handling the additional cases. The CBO score, as you know, is very important for Congress. I don't think it's right to say Congress knew what it was doing. You may win without that, but I think that's not correct. I don't think CBO is itself Congress. Correct. Do you challenge that Congress relies on the CBO score when it's doing legislation? No. As part of the committee reports, I accept the proposition that the legislative history doesn't say one thing or another about sovereign immunity. The legislative history does talk about the purpose of the statute, and that is consistent with a conclusion that Congress wanted to hold the government liable, just as any private furnisher of information would be for failing to comply with their duties. Justice Gorsuch raised an important question. You mentioned separation of powers. My understanding is that the reason we have that is because taxpayer money is valuable, and we should be sure it's been appropriated before we funnel a bunch of money out of the treasury. That's both to ensure that money can be spent on other programs because it's not a limitless money. The Treasury needs to ensure otherwise that taxes aren't raised. Do you dispute any of that? Not at all. You have two principles that are designed to protect that interest. One is the sovereign immunity canon. The government gets the benefit of ambiguities even if that's not the best policy requirement. So a broad statute cannot waive sovereign immunity. The statute must discuss governmental entities specifically, which the definition here does. Counselor, I guess I'm a little confused. I can understand that you don't need to make the argument to protect the federal fisc. I would have thought that the answer might be Congress is in the best position to do that. Article 1 gives them power over the federal fisc. And we have no license to expand or contract its instructions artificially, but follow them instead faithfully. That's right. At bottom, this is a policy choice for Congress to make. One would have thought. Why is there a clear statement rule then? Just as with other policy choices, the area is particularly sensitive. Why is it sensitive? What is insensitive? Why is it sensitive? Focus on that. Good. Well, I think the court takes holding the government liable especially for damages seriously. It doesn't want to construe ambiguous text in a way that may be different than Congress understood ambiguous text. When the text is clear, that's a different matter altogether. When there's only one plausible interpretation, the court shouldn't be applying a different interpretation. Some of our cases have suggested that the reason we have a clear statement rule is to in this area prevent the waiver of sovereign immunity accidentally. It can't be through inadvertence that Congress has waived sovereign immunity. So you could look at this statute and especially the Q problem and so forth and say that the waiver was accidental. It was inadvertent. And that's exactly what the clear statement rule tries to prevent. So what would be your best counter to that? I have two counters. One is about interpretation. The first one is I don't see how you have a  interpretation that looks behind clear text to say does Congress really mean this. If the 1996 act had reenacted the definition of person word for word, if the committee had    word for person, if you had a rule that looks behind the text, the outcome would be different. And the FICRA specific argument is here you have a situation as I mentioned in my opening. Congress didn't just make a single amendment  FICRA. It amended the civil liability provision. On the next page you use the word person to extend obligations on to those who furnish information to consumer reporting agencies. I think it's implausible that when Congress does that, it doesn't apply. First, suppose that employees had decided the very issue that is before us now. Would you say that we should disregard it because it used an outmoded method of statutory interpretation? If employees decided the fair answer, I think the court should and has in the past in the case of implied causes of action has rejected prior methods of interpretation. Was that a yes or no? Or maybe? I may have lost spot on the original question. If it involved the very question that is before us now, do you think we should disregard it because we disagree with the method of statutory interpretation? If it's the very question in a different statute, my answer would be the same. The court should not follow a method of interpretation that you have rejected previously in construing a new statute.     the 1970s and the 1980s that use a method of statutory interpretation that is not the same as a method of statutory interpretation that is probably not the one that we would use if those questions came before us today. Do you think we should disregard all of those? Are they all fair game? I think it's open to litigants to argue that the court should not follow a method of statutory  that is  the one that we would use if those questions came before us today. You have to be saying that this is a different statute and you are saying it has a different structure. I didn't think you said it had a different structure. I thought you said the methodology used. The statute has a different structure. The government can still enforce the FLSA against states. That was an important part of the decision. You have treated employees as if it's a one-off outlier. It seems like the same principles accepted by all nine justices. In other words, the specific reference to states in the original act, the court goes out of its way to say that alone would not have been good enough to do it and cites employees. In college savings bank, the court makes a big point that employees should be treated as an outlier. It's not an outlier. It's never been cited again. It hasn't been cited for the statutory interpretation point since the late 80s. In union gas, the statute was written differently. There was additional language in the definition section that was dispositive. The court didn't have to reach out and try to address the question the court might have to address here. How viable is that method of interpretation? I want to get back to this because it mentions the text and mentions this principle we don't interpret the text to waive sovereign immunity. And then there's nothing else that would suggest in the history of it suggest a waiver either. That sounds like an opinion you could write now. There's nothing in employees that grapples with why the statutory definition in that case does not beat the clear statement standard. I thought it said that because the reference to government to public employee orders was not in the cause of action provision. If that's how employees is read and that is inconsistent, I would argue the court has said since which is Congress can state its intent in any way it wants. If you simply foreclose statutory definitions in Congress's ability to state its intent. It's a thin line, but the line has been between in the cause of action provision itself is the explicit reference and in a separate definition provision as in employees mentioned in union and gas as well. That's different. It's a thin line. I might not come up with that if I was starting from scratch. But is it really a line at all? What if we have the definition provision next to the cause of action provision? Here it's an A, fine, but you can imagine a world in which they write 1681 in and one is the provision that says any person willfully etc. And two is person means and they list out the entities. I think it's so fine a line that it probably isn't nonexistent from the standpoint of really understanding what's going on. I do think it's a fairly arbitrary line if you hold on to it. If you try to refashion employees into the modern era and say this is the line we're going to draw in terms of telling Congress how it needs to write a statute, do not identify any government in the statutory definition. Put it in the cause of action. That's one thing. It's a good point. It's exactly the Brennan dissent. I said that before. But once again I would point out that none of the courts of appeals that have addressed this issue read employees that way. They don't cite it. In D.C. it wasn't even raised. It was raised in the oral argument. That's the only court that wasn't raised. With us setting forth a statement like that, you need to do this would be contrary to our obituary in which we say you don't need magic words. The way I see it is the court is reluctant to tell Congress how to craft legislative language because that is inherently tied to policy making which is an article one type of function. Even though the court will interpret the words Congress does use, it is not going to tell Congress if you list out a definition you better include Indian tribes. What the court is going to do is say we are going to give the text its plain meaning. This text is not ambiguous. Do you take any stock on the amendment history? I appreciate the plain meaning. We just look at the statute and see what it says. Maybe in that world it is parallel to employees. Employees seemed to have not amended the cause of action. Here we have an amendment history that shows that Congress was amending the cause of action. If our ultimate question is how and whether we should be implying some kind of intention on Congress's part to extend the cause of action to government, is the amendment history relevant at all? I think it is relevant that Congress amended the cause of action. The other things that go along with that are the fact that Congress amended the cause of action and imposed substantive duties on government. The other thing to keep in mind is that  the amendment history shows that it knows how to create exemptions for  government. The Truth in Lending Act extends liability to all creditors. Even though the government is a creditor, we don't want liability to be imposed. In the equal equality act, that was enacted one year after employees. In 1976, they said we don't want punitive damage. Thank you, counsel. Assume for the sake of argument that person does not include the government. Could you give me your best answer to the argument that an and O should be treated the same way? An and O deal with civil liability which deals with the substantive provisions of the statute, all of which use person consistently to include the government. It's a different context entirely. Do you think Q doesn't deal with the government because the government can't be jailed, or do you think it doesn't include the government for what other reason? If the case were before me, I would say it includes the government because Congress did not create an exemption like it did in the truth and lending act. There are all sorts of things that I mentioned earlier, the clean water act being the primary one, where the government is included in the criminal provision, and it speaks about jailing and imprisonment, and we just don't apply the jailing part because you can't jail a corporate entity, correct? It would be the same analysis for corporate entities and the government. It's not that you're reading person differently in Q, you're just saying that some remedies can't be applied. I think that's right. There are a number of ways to deal with Q. We have arguments in the alternative including the ones that the statute does not speak to the civil liability provisions. I would say the better reading is to apply the statute as written. The court usually doesn't avoid a plain language reading the statute to avoid potential pitfalls down the line. The court doesn't have to address the complicated question of criminal liability because of the alternative that was adopted below which is to say the concerns are unique to the criminal context and do not apply to civil liability or the substantive duties. Justice Kagan. Justice Gorsuch. Justice Kavanaugh. Just on that last point, I don't understand how we could not address it if the argument is that if a person does not include government there, that shows that there are some plausible readings of person that would include government elsewhere. You would address it by saying even if it doesn't include government, it's not plausible to infer the absence of the definition in the criminal context to the civil context. You need a different reason. That includes punitive damages. Punitive damages is also a requirement. I don't think there's a different standard for punitive damages. In fact, 1681 U.J. has a provision for punitive damages. Thank you. Justice Barrett? Justice Jackson? Thank you, counsel. Mr. Snyder, we'll give you three minutes. Thank you. A few quick points. One of the purposes for the clear statement rule is to make sure that Congress has specifically considered the question of whether it wants to address that. One of the reasons to require specific references to sovereign entities is to make sure that Congress has made that conscious decision. My friend acknowledged that there's a specificity requirement. The problem with that understanding is that it asks for specificity about the government. The definition that Congress adopted in 1970 does make clear that in some references, it does cover the government, but it doesn't make clear that Congress was specifically focused on waiving the sovereign immunity. There was also a suggestion that perhaps the word person means the same thing in all parts of the statute, but there are just defenses that exist under the criminal provision that would exempt the government from liability there. We think that's right. We think the same thing is true with 1681 N and O. The fact that person might include the sovereign does not answer the separate question of whether the sovereign has defenses to civil liability. Finally, my friend tried to distinguish employees. I think as Justice Kavanaugh alluded to, his arguments sound a lot like the dissent in employees, which accused the majority opinion of engaging in ritualism by focusing on exactly what was and was not in the statutory text. Of course, this court's decisions today follow the approach the majority took there, not the dissent. One other distinction he attempted to draw was that in employees, the statute allowed for enforcement by the FTC. He thinks FICRA is enforceable by the FTC. If you decide that the    by the FTC, you can go to the United States throughout the rest of the act. FICRA is on all fours with employees, and we would win even on that understanding. Thank you. Thank you, counsel. The case is submitted.